## BARKER v. IRVING.

Circuit Court of Appeals, Fifth Circuit. March 12, 1928.

Rehearing Denied March 31, 1928.

No. 5184.

Shipping ⊙⟳86(2¾)—Evidence held Insufficient to sustain finding of barge owner's liability for injury to roustabout.

Evidence *held* insufficient to sustain a decree finding owner of a barge liable for injury to a roustabout.

Foster, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Louis H. Burns, Judge.

Suit in admiralty by John Irving against Alexander Barker. Decree for libelant, and respondent appeals. Reversed and remanded, with directions.

Walter W. Wright, of New Orleans, La., for appellant.

W. J. Waguespack and Herbert W. Waguespack, both of New Orleans, La., for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This is an appeal from a decree in admiralty awarding $4,000 as compensation for a personal injury sustained by appellee.

Appellant was the owner of a line of river steamers and barges, which he used in commerce on the Mississippi river and connecting waterways in the vicinity of New Orleans. While one of these steamers, with a barge in tow, was making a landing at a wharf in New Orleans, appellee, a roustabout, attempted to make fast on the forward deck of the barge a line, one end of which had just been passed over a piling on the wharf. The strain of taking up the slack pulled loose one end of the crosspiece of the bitt, which struck appellee's leg and broke it. The libel alleges that appellee was ordered to handle the line, and did so in a skillful manner, and that the cause of his injury was that the crosspiece of the bitt was made of wood of insufficient strength and was insecurely bolted to the uprights. On the other hand, the answer denies that any order was given to appellee to fasten the line, and avers that the crosspiece was made of sound timber of sufficient strength, and was securely fastened to the uprights by bolts of adequate size and strength.

The District Judge did not have the advantage of seeing and hearing the witnesses, as all the testimony was taken by deposition. On the issue whether appellee, in attempting to fasten the line to the bitt, was acting in pursuance of orders, the testimony was in hopeless and irreconcilable conflict. Appellee testified that the order was given by the mate. He did not claim that he had any assistance, but said that Carroll Johnson, who was an "inside man," was at the time of the accident at the winch, engaged in lowering the gangplank. Two other witnesses, who also claimed that they were roustabouts on this trip, testified for appellee that they heard the mate give the order, and also testified that Johnson was lowering the gangplank. One of them corroborated appellee by saying that no one else had hold of the line, while the other one testified that two other men were assisting, although he was unable to give their names.

The mate testified for appellant that two inside men were regularly employed on the barge; that it was the duty of these men to assemble freight and check it for delivery at landing places, and when making a landing to fasten lines to the bitts; that the forward bitt was in charge of Johnson, and the bitt aft was in charge of Wilson Joseph; that the roustabouts were not regularly employed, and were not required or expected to fasten lines to the bitts; that on the occasion of appellee's injury Johnson had passed the line ashore, and, after one end was looped over the piling, was standing at the forward bitt with the line in his hand, and that appellee, without any order or direction, attempted to fasten it to the bitt and put it on wrong; that he discovered it as soon as the taking up of slack caused a strain, and immediately or-

dered Johnson and appellee away from the bitt; that Johnson got out of the way, but appellee remained and was injured. The mate's testimony was fully corroborated by Johnson and by Frank Green, who had placed the end of the line over the piling and was standing on the wharf.

Appellee's testimony did not sustain the averment of the libel to the effect that the line was placed on the bitt in a skillful manner, but in this particular was in agreement with that of the mate, to the effect the line was passed over one end of the crosspiece, with a half turn around the upright on the port side. The result was that a direct strain was put upon the crosspiece. Both the mate and appellant, the owner, testified to and illustrated the proper manner in which a line is fastened to a bitt. According to their testimony, the line should have been passed over the middle and under the ends of the crosspiece, and around the uprights in the form of an S to give slack, and in the form of an 8 to hold tight. If either of these methods had been followed, it would have been impossible for the crosspiece to have pulled loose. The crosspiece was 8x8 inches in width and thickness, made of cypress, mortised into the uprights and held in place by bolts five-eighths of an inch in diameter.

The District Judge, in a written opinion, resolved the conflict of evidence on the question whether or not the mate issued the order claimed in favor of appellee, and further held that the barge was unseaworthy, because the bitt was insufficient. If the District Judge had heard the witnesses, and had had an opportunity to pass upon their credibility, it may be assumed that an appellate court ought to accept his findings of fact to the effect that the mate ordered appellee to handle the line; but, as the testimony was taken by deposition, the credibility of the witnesses can only be determined by the reasonableness of their testimony as disclosed by the cold print of the record.

Appellee and his two witnesses agreed that Johnson, whose regular employment required that he perform the task undertaken by appellee, was engaged in lowering the gangplank. They are in disagreement as to whether the line was being handled by one person, or by a number of persons. They are contradicted by three witnesses, at least two of whom appear to be more intelligent, and to give a more reasonable account of what occurred. The time had not arrived for Johnson to lower the gangplank, for the landing had not been made. It appears to be most unreasonable that the mate would

have deliberately selected the roustabout, whose duties were to load and unload freight, to help make a landing, when he had present a man employed for that very purpose.

The bitt was safe enough, if used in the proper manner. It was not constructed to withstand a strain upon one end of the crosspiece, but was intended for use in a manner in which it would be held by pressure of the line against the upright timbers. Our conclusion is that it is not shown, by a preponderance of the evidence, either that the order relied on by appellee was given, or that the barge was rendered unseaworthy because of the construction of the bitt.

The decree is reversed, and the cause remanded, with directions to dismiss the libel.

FOSTER, Circuit Judge, dissents.